UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| PROF-2013-S3 LEGAL TITLE TRUST V, | Case No. 2:16-CV-1346 JCM (CWH) |
| Plaintiff(s), | ORDER |
| v. | |
| SATICOY BAY LLC, et al., | |
| Defendant(s). | |

Presently before the court is defendant Timber Creek Homeowners' Association's ("Timber Creek") motion to dismiss. (ECF No. 49). Plaintiff PROF-2013-S3 Legal Title Trust V, by U.S. Bank National Association, as Legal Title Trustee ("U.S. Bank") filed a response (ECF No. 55), to which Timber Creek replied (ECF No. 57).

Also before the court is Saticoy Bay LLC, Series 5526 Moonlight Garden Street's ("Saticoy Bay") motion to dismiss. (ECF No. 53). U.S. Bank filed a response (ECF No. 64), to which Saticoy Bay replied. (ECF No. 64).

Also before the court is U.S. Bank's motion for FRCP 56(d) relief. (ECF No. 56). Timber Creek filed a response. (ECF No. 65). U.S. Bank did not file a reply and the time to do so has passed.

Also before the court is Saticoy Bay's motion for summary judgment. (ECF No. 58). U.S. Bank filed a response (ECF No. 75), to which Saticoy Bay replied (ECF No. 80).

Also before the court is U.S. Bank's motion for summary judgment. (ECF No. 59). Saticoy Bay filed a response (ECF No. 76), to which U.S. Bank replied (ECF No. 81).

Also before the court is U.S. Bank's motion for summary judgment. (ECF No. 62). Saticoy Bay filed a response (ECF No. 69), to which U.S. Bank replied (ECF No. 84).

Also before the court is the parties' stipulation to extend time for Timber Creek to respond to dispositive motions. (ECF No. 63).

Also before the court is Saticoy Bay's motion to strike U.S. Bank's motions for summary judgment (ECF Nos. 59, 62). (ECF No. 77). U.S. Bank filed a response (ECF No. 82), to which Saticoy Bay replied. (ECF No. 85).

**I.     Facts**

This action arises from a dispute over real property located at 5526 Moonlight Garden Street, Las Vegas, Nevada 89130 ("the property"). (ECF No. 1).

Charles and Danielle Bohannan ("the Bohannans") purchased the property on May 29, 2009. (ECF No. 59). The Bohannans financed the purchase with a loan in the amount of $235,653.00 from Pulte Mortgage, LLC ("Pulte"). (ECF No. 59-1). Pulte secured the loan with a deed of trust, which names Pulte as the lender, First American Title as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary as nominee for the lender and lender's successors and assigns. *Id*. On October 21, 2016, U.S. Bank acquired all beneficial interest in the deed of trust via an assignment, which U.S. Bank recorded with the Clark County recorder's office. *Id*.; (ECF No. 60-1).

On December 3, 2010, Timber Creek, through its agent defendant Nevada Association Services ("NAS"), recorded a notice of delinquent assessment lien ("the lien") against the property for the Bohannans' failure to pay Timber Creek in the amount of $1,225.00. (ECF No. 59-1). On July 26, 2011, Timber Creek recorded a notice of default and election to sell pursuant to the lien, stating that the amount due was $1,195.50 as of June 25, 2011. *Id*.

In an attempt to exercise its right of redemption, U.S. Bank's predecessor in interest requested from Timber Creek the superpriority amount of the lien. *Id*. On October 11, 2011, Timber Creek provided a payoff ledger of the Bohannans' total amount due from April 2010 to December 2011. *Id*. The payoff ledger shows an outstanding balance of $1,563.73 but does not state what portion of the balance constitutes the superpriority portion of the lien. *Id*. The ledger also does not include charges for maintenance and nuisance abatement. *Id*. The ledger does state, however, that Timber Creek's monthly assessments against the property were $55.00. *Id*.

James C. Mahan
U.S. District Judge

U.S. Bank's predecessor in interest used Timber Creek's ledger to calculate the superpriority amount as $495.00, the sum of nine months of common assessments. *Id.* On October 27, 2011, U.S. Bank's predecessor in interest sent a letter and a check for that amount to Timber Creek. *Id.* The letter explained that the check was the sum of nine months of common assessments and intended to pay off the superpriority portion of the lien. *Id.* Timber Creeks rejected the payment without explanation. *Id.*

On February 29, 2012, Timber Creek recorded a notice of foreclosure sale against the property. (ECF No. 60-1). On October 5, 2012, Timber Creek sold the property in a nonjudicial foreclosure sale to Moonlight Garden Street Trust in exchange for $4,900.00. *Id.* On October 12, 2012, Moonlight Garden Street Trust recorded the deed of foreclosure. *Id.* On September 30, 2013, Saticoy Bay acquired the property via a sale deed, which it recorded with the Clark County recorder's office. *Id.*

On June 15, 2016, U.S. Bank initiated this action. (ECF No. 1). In the first amended complaint, U.S. Bank alleges eight causes of action: (1) quiet title/declaratory relief against all defendants; (2) unjust enrichment against Timber Creek; (3) wrongful foreclosure against Timber Creek; (4) negligence against Timber Creek; (5) negligence per se against Timber Creek; (6) breach of contract against Timber Creek; (7) misrepresentation against Timber Creek; (8) breach of covenant of good faith and fair dealing against Timber Creek. (ECF No. 45).

**II.    Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to

withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material fact conclusively in its favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.    Discussion**

Before the court are several motions. First, the court will grant Saticoy Bay's motion to strike because U.S. Bank's motions for summary judgment exceed the maximum page limit under Local Rule 7-3(a). Second the court will grant summary judgment in favor of U.S. Bank because U.S. Bank's predecessor in interest tendered the superpriority portion of the lien. Third, the court will deny as moot all remaining motions.

*a.   Motion to strike*

Saticoy Bay argues that the court should strike U.S. Bank's motions for summary judgment (ECF Nos. 59, 62) pursuant to Local Rule 7-3(a) because the motions collectively exceed the page limit. (ECF No. 77). Here, U.S. Bank has filed two motions for summary judgment. The first motion briefs twenty (20) pages on U.S. Bank's claim for quiet title/declaratory relief. (ECF No. 59). The second motion briefs another eleven (11) pages on U.S. Bank's claim for quiet title/declaratory relief. (ECF No. 62). The court will not treat these documents as separate motions as they raise legal arguments pertaining to the same cause of action. Thus, U.S. Bank has briefed a total of thirty-one (31) pages—a clear violation of the thirty (30) page limit set forth in Local Rule 7-3(a). As a remedial measure and for purposes of judicial efficiency, the court will strike only U.S. Bank's second motion for summary judgment (ECF No. 62).

*b.   Summary judgment*

The parties have filed cross-motions for summary judgment, disputing whether the foreclosure sale extinguished the deed of trust. (ECF Nos. 58, 59).

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of

determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, a party must show that its claim to the property is superior to all others in order to succeed on a quiet title action. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the Nevada Revised Statutes[1] allows an HOA to place a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Moreover, NRS 116.3116(2) gives priority to that HOA lien over all other encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to the subparagraph (2)(b) exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

NRS 116.3116 *et seq*. ("Chapter 116") permits an HOA to enforce its superpriority lien with a nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see*

---

[1] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

James C. Mahan
U.S. District Judge

*also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

NRS 116.31166(1) provides that when an HOA forecloses on a property pursuant to NRS 116.31164, the following recitals in the deed are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[2]  "The 'conclusive' recitals concern . . . all statutory prerequisites to a valid HOA lien foreclosure sale." *See Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016).  Nevertheless, courts retain the equitable authority to consider quiet title actions even when an HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, the parties have provided the recorded notice of delinquent assessment, the recorded notice of default and election to sell, the recorded notice of foreclosure sale, and the recorded trustee's deed upon sale. *See* (ECF No. 59-1).  Further, the recorded foreclosure deed contains the necessary recitals to establish compliance with NRS 116.31162 through NRS 116.31164.  (ECF No. 60-1); *See id.* at 1112.  Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale was valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

While NRS 116.3116 accords certain deed recitals conclusive effect, it does not conclusively entitle the buyer at the HOA foreclosure sale to success on a quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting that NRS 116.31166 defeats, as a matter of law, actions

---

[2] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

> 3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

to quiet title). Thus, the question remains whether plaintiff has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.*

"When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id.*

U.S. Bank argues that the foreclosure sale did not extend the deed of trust because U.S. Bank's predecessor in interest tendered the superpriority portion of the lien. (ECF No. 59). The court agrees.

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing the deed of trust. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, BOA could have paid off the SHHOA lien to avert loss of its security . . ."). The superpriority portion of the lien consists of "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411; *Horizons at Seven Hills Homeowners Association v. Ikon Holdings, LLC*, 373 P.3d 66 (Nev. 2016).

In *Bank of America*, the Nevada Supreme Court held that a foreclosure sale did not extinguish a first deed of trust when Bank of America, the holder of the deed of trust, used the HOA's representations to calculate and tender the sum of nine months of delinquent assessments. *Bank of America, N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 121 (Nev. 2018) ("*Bank of America*"). Although the superpriority portion of an HOA lien typically includes maintenance and nuisance abatement charges, the court held that "Bank of America tendered the correct amount to satisfy the superpriority portion of the lien . . . [because] the HOA did not indicate that the property had any charges for maintenance or nuisance abatement." *Id*. at 118.

The Nevada Supreme Court's holding in *Bank of America* controls the court's analysis in this case. Like *Bank of America*, where Bank of America relied on the HOA's representations to calculate nine months of assessments, U.S. Bank's predecessor relied on Timber Creek's ledger to calculate nine months of assessments. *See id*. at 118; (ECF No. 119). Further, Timber Creek, like

the HOA in *Bank of America*, did not indicate that the property had any charges for maintenance or nuisance abatement. *See Bank of America*, 427 P.3d at 118; (ECF No. 119). Thus, when U.S. Bank's predecessor sent a check for nine months of assessments to Timber Creek, it properly tendered the superpriority portion of the lien. Therefore, the nonjudicial foreclosure sale did not extinguish the deed of trust. *See id*. at 121 ("It follows that after a valid tender of the superpriority portion of an HOA lien, a foreclosure sale . . . cannot extinguish the first deed of trust").

### c. Remaining motions

The parties have filed various motions that, because of U.S. Bank's motion for summary judgment (ECF No. 59), cannot alter the outcome of this action. Therefore, the court will deny as moot all remaining motions. The court will also dismiss all remaining claims as there are no pertinent issues left to resolve.

## IV. Conclusion

In light of the foregoing, U.S. Bank is entitled to judgment as a matter of law against all defendants on its claim for quiet title/declaratory relief.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Timber Creek's motion to dismiss (ECF No. 49) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that Saticoy Bay's motion to dismiss (ECF No. 53) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that U.S. Bank's motion for rule 56(b) relief (ECF No. 56) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that Saticoy Bay's motion for summary judgment (ECF No. 58) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that U.S. Bank's motion for summary judgment (ECF No. 59) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that U.S. Bank's motion for summary judgment (ECF No. 62) be, and the same hereby is, DENIED without prejudice.

James C. Mahan
U.S. District Judge

IT IS FURTHER ORDERED that the parties' stipulation to extend time for Timber Creek to respond to dispositive motions (ECF No. 63) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that Saticoy Bay's motion to strike U.S. Bank's motion for summary judgment (ECF No. 77) be, and the same hereby is, GRANTED, consistent with the foregoing.

The clerk shall enter judgment accordingly and close the case.

DATED November 14, 2018.

_____
UNITED STATES DISTRICT JUDGE